**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-6283

MARCUS HAHN,

Petitioner – Appellant,

v.

WARDEN BONITA MOSELEY, Federal Correctional Institution, Edgefield, South Carolina,

Respondent – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Beaufort.  Joseph F. Anderson, Jr., Senior District Judge.  (9:16–cv–03235–JFA)

Argued:  May 9, 2019                    Decided:  July 24, 2019

Before GREGORY, Chief Judge, WYNN, and THACKER, Circuit Judges.

Reversed and remanded with instructions by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Wynn and Judge Thacker joined.  Judge Wynn wrote a concurring opinion.

**ARGUED:**  Susan Michelle Pelletier, MUNGER, TOLLES & OLSON LLP, Washington, D.C., for Appellant.  John Michael Pellettieri, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.  **ON BRIEF:** Chad Golder, MUNGER, TOLLES & OLSON LLP, Washington, D.C., for Appellant. Brian A. Benczkowski, Assistant Attorney General, Matthew S. Miner, Deputy Assistant Attorney, General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE,

Washington, D.C.; Sherri A. Lydon, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

————————

GREGORY, Chief Judge:

Petitioner-Appellant Marcus Hahn appeals the final order of the district court denying his petition for a writ of habeas corpus under 28 U.S.C. § 2241. Because Hahn's current sentence stems from faulty arithmetic based on a now-obsolete scheme of statutory interpretation, we conclude that Hahn's petition meets the requirements of 28 U.S.C. § 2255(e), the savings clause. We therefore reverse the district court's order and remand with instructions to grant Hahn's writ of habeas corpus.[1]

## I.

On December 31, 1999, law enforcement from various state and federal agencies executed a search warrant for Hahn's home near Albuquerque, New Mexico. Hahn was arrested after law enforcement discovered and seized marijuana plants and firearms during that search. On December 7, 2000, at the conclusion of a jury trial in the United States District Court for the District of New Mexico, a jury convicted Hahn of the following four counts: (1) intentionally manufacturing 100 or more marijuana plants;[2] (2) opening and maintaining a place for the purpose of manufacturing, distributing, and

---

[1] The Government requested that this Court stay the current proceedings in anticipation of the Supreme Court's decision whether to grant certiorari in *United States v. Wheeler*, 734 F. App'x 892 (4th Cir. 2018). The Government's request is moot because the Supreme Court denied certiorari in *Wheeler* on March 18, 2019. *See United States v. Wheeler*, 139 S. Ct. 1318 (2019).

[2] *See* 21 U.S.C. § 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2.

using marijuana;[3] (3) possessing firearms in furtherance of the intentional manufacturing of 100 or more marijuana plants;[4] and (4) possessing a firearm in furtherance of the opening and maintaining a place for the purpose of manufacturing, distributing, and using marijuana.[5]  Counts III and IV are based on the same gun collection, which includes 21 firearms.

In 2001, the district court sentenced Hahn to 480 months' imprisonment for these gun and drug offenses.  He received 60 months' imprisonment for Count I, a concurrent 27 months for Count II, a consecutive 120 months for Count III, and a consecutive 300 months for Count IV.[6]

In 2002, on direct appeal to the Tenth Circuit, Hahn challenged the legality of his sentence for his second firearm conviction.  He contended that the district court impermissibly treated his second firearm conviction as "second or subsequent" to his first firearm conviction for purposes of the statute's sentencing enhancement.  *Hahn I*, 38 F. App'x at 554.  Hahn argued that the court's approach was in error because the underlying drug crimes were part of a "continuing incident" and were "coterminous in space and time."  *Id.*  The Tenth Circuit rejected this argument, relying principally on *United States*

---

[3] *See* 21 U.S.C. § 856 (a)(1), (b).

[4] *See* 18 U.S.C. § 924(c)(1)(A).

[5] *Id.*

[6] The sentencing court characterized the Count IV firearm conviction as a "second or subsequent" conviction under § 924(c), for which the statute mandated a consecutive sentence of twenty-five years.  *United States v. Hahn*, 38 F. App'x 553, 554 (10th Cir. 2002) ("*Hahn I*").

*v. Sturmoski*, 971 F.2d 452, 461 (10th Cir. 1992) ("[C]onsecutive sentences may be imposed for multiple 924(c) counts if the offenses underlying each 924(c) count do not constitute a single offense for double jeopardy purposes."). Similar to Hahn, the defendant in *Sturmoski* appealed convictions for: (1) attempting to manufacture a controlled substance; (2) maintaining a place for manufacturing a controlled substance; and (3) two 18 U.S.C. § 924(c) convictions for facilitating the aforementioned drug counts. *Hahn I*, 38 F. App'x at 555. The *Sturmoski* court held that "Congress intended multiple convictions under 924(c), even though the counts involved 'the same criminal episode,' because Congress intended the underlying offenses to be separate." *Id.* After reviewing *Sturmoski*, the Tenth Circuit in Hahn's case found that "[t]he only difference between the situations in *Sturmoski* and in this case is that one of Hahn's 924(c) convictions was for possession in furtherance of manufacture, rather than possession in furtherance of attempt to manufacture." *Id.* Given the factual and legal similarities between *Sturmoski* and Hahn's case, the court found that "*Sturmoski* clearly controls the outcome of this case. Hahn's conviction for maintaining a place for manufacture is distinct from his manufacture conviction, and his two 924(c) convictions are also distinct." *Id.* The court further ruled that "even if possession of a firearm occurs in connection with a single criminal episode, a second 924(c) conviction arising out of that episode can constitute a 'second or subsequent conviction' for sentencing purposes." *Id.* The Tenth Circuit therefore affirmed Hahn's convictions and sentence. *Id.*

In 2004, Hahn filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence in the United States District Court of New Mexico. He argued that

5

"double jeopardy bars multiple § 924(c)(1) firearm convictions based on multiple predicate offenses which are factually inseparable in terms of time, space and underlying conduct." *United States v. Hahn*, 191 F. App'x 758, 760 (10th Cir. 2006) (citation and internal quotation marks omitted) ("*Hahn II*"). Hahn also argued that "§ 924(c)(1) contains a number of ambiguities, requiring application of the rule of lenity." *Id.* Hahn explained that he did not previously raise these arguments because he received ineffective assistance of counsel. The district court dismissed the motion in 2004, concluding that Hahn's arguments were procedurally barred and without merit. *Id*.

Hahn filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e). He disputed that his double jeopardy claim had been resolved on direct appeal and moved to amend his § 2255 motion to add more evidence. *Id.* The district court treated these motions as successive § 2255 motions and transferred them to the Tenth Circuit. Hahn appealed this determination, and the Tenth Circuit issued a certificate of appealability to consider Hahn's § 924(c)(1) arguments. The Tenth Circuit subsequently affirmed the dismissal and held that: (1) Hahn forfeited his double jeopardy claim and it was procedurally barred because he did not raise it on direct appeal; (2) even if his double jeopardy claim was not procedurally barred, counsel's failure to raise it would not have constituted ineffective assistance of counsel because *Sturmoski* controls and renders Hahn's double jeopardy claim meritless; and (3) as to the ambiguity argument, a motion to vacate could not be used, absent an intervening change in circuit law, to raise an argument that was resolved on direct appeal. *Hahn II*, 191 F. App'x at 760-61.

In 2015, Hahn filed a motion under Rule 60(b)(4), alleging that he was entitled to relief because of an en banc Tenth Circuit decision issued after the dismissal of his petition. *United States v. Rentz*, 777 F.3d 1105 (10th Cir. 2015). Hahn argued that *Rentz* altered the substantive law in the Tenth Circuit by establishing a new statutory framework interpreting § 924(c). Specifically, Hahn contended that *Rentz* added a unit-of-prosecution requirement for a § 924(c) conviction and therefore entitled him to relief denied under *Sturmoski*. Unit-of-prosecution questions ask whether the conduct at issue "constitutes one, or several, violations of a single statutory provision." *Callanan v. United States*, 364 U.S. 587, 597 (1961). In *Rentz*, the Tenth Circuit addressed the issue of whether, as a matter of statutory construction, § 924(c) "authorizes multiple charges when everyone admits there's only a single use, carry, or possession." 777 F.3d at 1108. After recognizing that this question was separate from the double jeopardy inquiry, the court ruled that each § 924(c) charge "requires an independent use, carry, or possession." *Id.* at 1115. Before *Rentz*, when *Sturmoski* was controlling law, multiple charges under § 924(c) were permissible as long as they did not run afoul of the Double Jeopardy Clause. After *Rentz*, the Tenth Circuit, based on the language of the statute itself, held that multiple charges under § 924(c) based on the same conduct were not proper even if they complied with the Double Jeopardy Clause. Thus, *Rentz* found that it was improper to allow multiple charges to arise from a single possession under the language of the statute. *Id.*

The district court determined that Hahn's motion should be treated as a second or subsequent § 2255 motion—i.e., a motion that could not be filed without precertification

7

by the Court of Appeals—and transferred it to the Tenth Circuit. Hahn then filed a motion to remand before the Tenth Circuit to allow the district court to consider the merits of his Rule 60(b) motion or, in the alternative, for authorization to file a second or successive § 2255 motion. The Tenth Circuit denied both the motion to remand and Hahn's request to file a second or successive § 2255 motion based on a procedural impediment. *Rentz* was a Tenth Circuit decision, and thus did not meet the requirements for a second or subsequent motion.

At some point after 2015, correctional officials transferred Hahn to a facility in South Carolina, where he is currently detained. Hahn filed the instant petition under 28 U.S.C. § 2241 in the United States District Court for the District of South Carolina. Pursuant to § 2241, federal courts have jurisdiction over habeas corpus petitions from federal inmates "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas petitions filed under this section must be filed in the jurisdiction where the federal prisoner is detained. 28 U.S.C. § 2241(a)(c)(3). Hahn's appeal is properly before us because he is detained in South Carolina.

Hahn contended that he was actually statutorily innocent of his second § 924(c) conviction after *Rentz* because the charge was procedurally improper. The magistrate judge issued a report that recommended denying Hahn's petition because Hahn could not meet the three-pronged test outlined in *In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000). That case holds that "§ 2255 is inadequate and ineffective to test the legality of a conviction" where:

(1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Id.* Hahn objected to the magistrate's report and recommendation, but the district court adopted the magistrate judge's recommendation and denied his petition. Hahn filed a Rule 59 motion to alter or amend the judgment. *See* Fed. R. Civ. P. 59(e). The district court denied the motion as without merit, and Hahn timely appealed.[7]

## II.

Generally, defendants who are convicted in federal court must pursue habeas relief from their convictions and sentences through the procedures set out in 28 U.S.C. § 2255. *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010). Nonetheless, § 2255 includes a "savings clause" that preserves the availability of § 2241 relief when § 2255 proves "inadequate or ineffective to test the legality of a [prisoner's] detention." 28 U.S.C. § 2255(e).

As the district court properly recognized, in determining whether to grant habeas relief under the savings clause, we consider (1) whether the conviction was proper under the settled law of this circuit or Supreme Court at the time; (2) if the law of conviction

---

[7] The district court had jurisdiction over Hahn's § 2241 petition under 28 U.S.C. § 1331. This Court has jurisdiction over this appeal under 28 U.S.C. §§ 1291(a) and 2253(a).

9

changed after the prisoner's direct appeal and first § 2255 motion; and (3) if the prisoner cannot meet the traditional § 2255 standard because the change is not one of constitutional law. *In re Jones*, 226 F.3d at 333-34. In evaluating substantive claims under the savings clause, however, we look to the substantive law of the circuit where a defendant was convicted. *In re Davenport*, 147 F.3d 605, 611-12 (7th Cir. 1998); *Eames v. Jones*, 793 F. Supp. 2d 747, 750 (E.D.N.C. 2011). Hahn was convicted in the Tenth Circuit. For this reason, we apply our procedural law, but Tenth Circuit substantive law governs the petition. We review the district court's denial of Hahn's § 2241 petition *de novo*. *Fontanez v. O'Brien*, 807 F.3d 84, 86 (4th Cir. 2015).

## A.

The first prong of *In re Jones* requires that "at the time of conviction, settled law of the circuit or the Supreme Court established the legality of the conviction." 226 F.3d at 333-34. Here, the legality of the conviction turns on whether it was proper at the time to charge and convict Hahn with two § 924(c) counts based on the possession of a single collection of firearms in both: (1) furtherance of intentionally manufacturing 100 or more marijuana plants and (2) the opening and maintaining of a place for the purpose of manufacturing, distributing, and using marijuana.

There are two legal principles that may limit the Government's power to pursue multiple charges for the same underlying conduct in this case: (1) the statute's unit of prosecution and (2) the Double Jeopardy Clause. At the time of Hahn's conviction, Tenth Circuit law held that the only requirement for charging multiple § 924(c)(1)(A) counts based on a single criminal event was that the crimes of violence or drug

10

trafficking crimes underlying each count be separate to avoid violations of the Double Jeopardy Clause.[8]  *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) (explaining that the Double Jeopardy Clause prohibits punishing a defendant for the same conduct under two distinct statutory provisions unless "each provision requires proof of a fact which the other does not").  *Sturmoski* did not address any concerns regarding the statutory unit of prosecution.

In *Sturmoski*, the Tenth Circuit rejected the defendant's argument that multiple § 924(c) convictions for the same underlying conduct were impermissible, reasoning that "separate convictions can arise from essentially identical facts" if the convictions do not violate double jeopardy.  971 F.2d at 461.  *Sturmoski* was the governing law at the time Hahn was charged and convicted.  It follows, then, that at the time of conviction the settled law of the Tenth Circuit established the legality of Hahn's two convictions pursuant to the same conduct under § 924(c).  Hahn thus meets the first requirement of our savings clause inquiry.

**B.**

Our decision in *In re Jones* next requires that we ask whether "subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal."  226 F.3d at 333-34.  Hahn argues that the Tenth Circuit's 2015 decision in *Rentz* renders non-criminal the conduct on which his second § 924(c) conviction was based.  We must

---

[8] The Tenth Circuit did not rely upon a separate unit-of-prosecution analysis when determining the propriety of multiple charges or counts.

11

therefore determine whether the rule announced in *Rentz* establishes that the conduct underlying Hahn's second firearm conviction is no longer criminal. We hold that it does.

In 2013, a panel of the Tenth Circuit heard *United States* v. *Rentz*, a case in which a defendant's single use of a firearm, resulting in one gun shot, led to convictions for two crimes: assault and murder. 735 F.3d 1245, 1247 (10th Cir. 2013). The grand jury indicted the defendant on two counts of use of a firearm in furtherance of a crime of violence, one for the assault and one for the murder. *Id.* The defendant moved to dismiss the second firearm count, arguing that: (1) Congress did not intend to punish a person for two violations of § 924(c) based on a single use of a firearm and (2) punishment on both firearm counts would violate the Double Jeopardy Clause. *Id.* The district court agreed and granted the defendant's motion. *Id.*

On appeal, the Tenth Circuit reversed. *Id*. at 1254. The panel, relying on *Sturmoski*, "held that the proper 'unit of prosecution' under § 924(c) is a single underlying offense—meaning that two convictions under § 924(c) arising from the same course of conduct were proper under the language of § 924(c)." *Id.* at 1250.

The Tenth Circuit later granted rehearing en banc to decide the unit of prosecution issue that led to the reversal of the district court's decision. *See Rentz*, 777 F.3d at 1117. The Tenth Circuit explained that the question presented was whether, as a "matter of statutory interpretation, § 924(c)(1)(A) authorizes multiple charges when everyone admits there's only a single use, carry, or possession." *Id.* at 1108. The court held that the Government must prove a separate use, carry, or possession for each § 924(c) charge

12

it brings. *Id.* at 1109. The court thus vacated the panel opinion relying on *Sturmoski* and affirmed the district court's decision. *Id.* at 1115.

Hahn argues that the en banc decision in *Rentz* constitutes a substantial change in the law because it introduces a new statutory framework that was not present in *Sturmoski*. We agree. Under *Sturmoski*, whether or not conduct could lead to multiple charges under § 924(c) in the Tenth Circuit depended solely on whether the charge violated the Double Jeopardy Clause. Now under *Rentz*, it is not enough that the multiple charges pass muster under the Double Jeopardy Clause. Rather, multiple charges must also comply with a unit-of-prosecution statutory analysis that examines how many distinct instances of conduct exist. When the charges or counts exceed the number of acts, those extra charges or counts cannot form the basis of additional criminal liability. In sum, *Rentz* constitutes a substantive change in the law that renders Hahn's firearm possession no longer sufficient to support two § 924(c) convictions.

The Government advances several arguments to the contrary, none of which we find persuasive. Relying on *Schlup v. Delo*, 513 U.S. 298 (1995), the Government attempts to import a procedural gateway actual innocence analysis into the adjudication of Hahn's petition. The Government argues that Hahn must demonstrate actual innocence: that he did not commit the underlying conduct, i.e., possession of the firearms, in order to warrant relief under the savings clause. The Government asks us to utilize an analysis that requires a petitioner "to support his allegations of constitutional error with new reliable evidence." *Schlup*, 513 U.S. at 324. This argument fails because the Fourth Circuit does not require an actual innocence analysis under the savings clause

13

and adopting the Government's position would be contrary to the settled and established law of this Circuit. 226 F.3d at 333-34. The test in *In re Jones* functions as a gateway to relief without interrogating the factual issues of whether the underlying criminal activity occurred. *In Re Jones* assumes that the factual record is settled but requires this Court to compare prior and current precedent to evaluate whether a substantive change in the law has occurred. A petitioner satisfies this standard if the substantive change in the law makes previously illegal conduct no longer a source of criminal liability. In other words, our analysis is tethered to a change in the law, not a change in the factual underpinnings or evidence of a criminal record. If this substantive change in the law occurs after the prisoner's direct appeal and first § 2255 motion, he satisfies the second requirement of the *In re Jones* standard. This is the standard that we use to ascertain a prisoner's entitlement to relief under the savings clause.

Moreover, the Government argues that *Rentz* does not control because there are factual differences between *Sturmoski* and *Rentz* that make them distinguishable. However, *Rentz* outlines a new statutory scheme of interpretation that is not a fact-dependent inquiry. Indeed, *Rentz* now defines and requires a unit-of-prosecution analysis in criminal matters implicating § 924(c). The newly required analysis applies to any § 924(c) charge regardless of the particular facts of the case.

The Government further argues that Hahn's case involves multiple possessions and that the petition should therefore still be denied. We also find this argument unavailing. Hahn was charged with two counts based on a single gun collection that the police discovered at his home on a single day. The same firearm collection was listed in the

14

indictment as support for both of the firearm counts. The Government argues that Hahn should still be found to have separate possessions under *Rentz* because the guns were found at different locations throughout his house. *See United States v. Hutching*, 75 F.3d 1453, 1460 (10th Cir. 1996). And yet we discern no cognizable relationship among the number of guns, the locations of the guns, and the number of § 924(c) counts in Hahn's the indictment. For instance, the indictment did not charge that ten of the guns were for the furtherance of the manufacturing charge based on one location and that eleven of the guns were for the furtherance of the place-of-manufacture charge based on another location. The same set of 21 guns was simply listed twice in the indictment, indicating that the two counts were based on drug activity and a singular possession. *Rentz* renders this approach impermissible.[9]

In conclusion, *Rentz* substantively changed the law of the Tenth Circuit. Because of this change, Hahn's petition satisfies the second prong of *In re Jones*. Only one firearm possession exists, and therefore—under *Rentz*—only one § 924(c) charge is proper here.

## C.

Finally, our decision in *In re Jones* provides that Hahn can pursue § 2241 relief only if he "cannot satisfy the gatekeeping provisions of § 2255 because the new rule is

---

[9] The Government correctly notes that the Tenth Circuit in *Rentz* explains that the exact definition of possession, carry, and use remains unsettled. However, this does not diminish the Tenth Circuit's holding in *Rentz* that where, as here, the Government charges two § 924(c) counts for the same single carry, use, or possession, the multiple charges are in error.

15

not one of constitutional law." 226 F.3d at 333-34. Hahn could not successfully pursue collateral review under § 2255 because *Rentz* did not rely on any rule of constitutional law and no new evidence was proffered. Hahn thus meets the third and final requirement of the savings clause and is entitled to relief.

## III.

Hahn's conviction on Count IV—the second of his § 924(c) convictions—cannot stand because it is not supported by an independent firearm possession under recent Tenth Circuit precedent. We therefore reverse the district court's decision and remand with instructions to grant Hahn's writ of habeas corpus and vacate his second conviction under 18 U.S.C. § 924(c) and the associated consecutive 300-month sentence.

*REVERSED AND REMANDED WITH INSTRUCTIONS*

16

WYNN, J., concurring:

I concur fully in the majority opinion.

I write separately to further explain why the "actual innocence" test proposed by the government—which the Supreme Court has directed courts to apply in determining whether a habeas petitioner may pursue a *procedurally defaulted* constitutional claim, *see Bousley v. United States*, 523 U.S. 614 (1998); *Schlup v. Delo*, 513 U.S. 298 (1995)—does not apply in determining whether a petitioner is entitled to avail himself of 28 U.S.C. § 2255's "savings clause" on grounds that a later-corrected error of statutory construction rendered "the conduct of which the prisoner was convicted . . . not criminal." *In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000) (en banc).

Under the *Schlup/Bousley* "actual innocence" test, Petitioner Marcus Hahn would have to show that "no reasonable juror would have found [him] guilty." 513 U.S. at 329. According to the government, the "actual innocence" test requires that a court review "all the evidence in the record as a whole"—even evidence that the jury did not necessarily credit in rendering its verdict, that was inadmissible at trial, or that became available only after trial—"and determine whether it is more likely than not that no reasonable juror would have found the defendant guilty beyond a reasonable doubt." Appellee's Br. at 37. The government maintains that Petitioner cannot meet this standard because firearms found in several locations in Petitioners' house constituted "independent" possessions—with firearms found in the ground floor of Petitioner's residence supporting his marijuana manufacturing offense and firearms found on the second floor of his home supporting his maintenance of a home for the purpose of marijuana manufacturing, distribution, and use

17

offense.  Appellee's Br. at 35–36.  Significantly, the government never presented that theory in its indictment or to the jury.

Several compelling reasons support our conclusion that the actual innocence framework does not apply in determining whether a petitioner is entitled to pursue relief under the savings clause as a result of a statutory construction error.  First, *Jones*—which established this Court's three-prong test for determining whether a petitioner may avail himself of the savings clause as a result of a later-corrected error in statutory construction— does not use the term "actual innocence," instead requiring a petitioner to show that "the substantive law changed such that *the conduct of which the prisoner was convicted* is deemed not to be criminal."  *Jones*, 226 F.3d at 333–34 (emphasis added).  The plain meaning of the phrase "the conduct of which the prisoner was convicted" refers to the conduct that a jury found beyond a reasonable doubt supported the prisoner's conviction.  But, as explained above, under the actual innocence set forth in *Schlup* and further explicated in *Bousley*, a court assessing whether a petitioner is entitled to relief is not limited to the facts the government introduced at trial, let alone to those facts that the jury found beyond a reasonable doubt.

Notably, *Jones* focused not on whether a petitioner was "actually innocent," but whether a subsequent change in statutory construction amounted to a "fundamental defect" in the petitioner's prosecution.  *Id.* at 332–33 & n.3; *see also In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998) (Posner, J.) ("A federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a *fundamental defect* in his conviction or sentence because the law changed after his first

2255 motion." (emphasis added)). The Tenth Circuit's (originally) errant construction of the statute under Petitioner was convicted, 18 U.S.C. § 924(c)(1), amounts to a "fundamental defect" amenable correction through Section 2255's savings clause because it deprived Petitioner of the chance to argue to the jury that the storage of the numerous guns in his house did not constitute independent possessions.

Second, this Court's holding in *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018)—that a prisoner may avail himself of Section 2255's savings clause if a retroactive change in the construction of a federal sentencing statute rendered the petitioner's sentence erroneous—runs contrary to an actual innocence requirement. In *Wheeler*, this Court rejected the district court's holding that *Jones* extended only to convictions tainted by statutory construction errors, and therefore not to sentences tainted by an error of statutory construction. 886 F.3d at 428. In reaching that conclusion, this Court emphasized that the *Jones* test explicitly applied to "fundamental defects" in "convictions *and sentences.*" *Id.* at 427 (quoting *Jones*, 226 F.3d at 332–33 & n.2)). *Wheeler*'s holding that *Jones* extends to sentences—not just convictions—establishes that *Jones* does not require actual innocence. Indeed, the petitioner in *Wheeler*, who was originally convicted of conspiracy to possess with intent to distribute crack and powder cocaine, was not "actually innocent" of the offense—he in fact possessed the crack and powder—he just was subject to a incorrectly high mandatory minimum as a result of an error by this Court in construing the statute under which he was originally sentenced. *Id.* at 419–21. Applying the actual innocence standard to challenges to a conviction when we apply the fundamental defect

19

standard in the sentencing context would create the odd result that a lower standard would apply in the context of sentencing challenges than conviction challenges.

Third, it makes no theoretical sense to extend the *Schlup/Bousley* actual innocence test to the savings clause context, at least in cases like the instant case in which the petitioner pressed his legal argument in his original proceedings. As explained above, the *Schlup/Bousley* actual innocence test applies when a prisoner *procedurally defaulted* the claim at issue. Typically, a federal prisoner seeks to rely on *Schlup/Bousley* actual innocence test when he cannot meet the "cause" and "prejudice" necessary to excuse the procedural default under Section 2255. For instance, the prisoner in *Bousley*, who had "pleaded guilty to 'using' a firearm in violation of 18 U.S.C. § 924(c)(1)," sought to void his plea on grounds that it was not knowing and voluntary after the Supreme Court clarified the definition of "using." 523 U.S. at 616. The prisoner procedurally defaulted the claim by failing to raise it in his direct appeal. *Id.* at 622. The Court held that the prisoner could not establish "cause" for his procedural default because he could have raised the argument in his direct appeal but failed to do so. *Id.* at 622–23.

By contrast, both before his original trial court and on direct appeal, Petitioner argued that the single indicted possession did not, as a matter of statutory construction, support his two Section 924(c)(1) convictions. The only reason that argument failed was because it was foreclosed by circuit precedent. Accordingly, at least when, as here, a petitioner does not procedurally default a claim, it is improper to subject that petitioner to a standard more onerous than the cause-and-prejudice standard applied in procedural default cases.

20

Finally, it is patently unfair to subject a petitioner to the onerous actual innocence standard when an appellate court's errant statutory construction foreclosed the petitioner from making a potentially meritorious argument to a jury or in a motion for acquittal. As the majority opinion explains, Petitioner repeatedly argued before his trial court and on direct appeal that the single indicted possession could not support two Section 824(c)(1) convictions. Under its actual innocence approach, the government theorizes that the jury could have found that firearms stored in different parts of the house constituted distinct possessions. But because circuit precedent foreclosed Petitioner's unit-of-prosecution argument—and, therefore, the government never needed to advance an independent possession argument to the jury—Petitioner was never given the opportunity to argue to the jury that all the firearms amounted to a single possession.

\* \* \* \* \*

I further note that even if *Schlup*'s actual innocence standard applied—and, as explained above, this Court rightly holds that it does not—Petitioner would be entitled to relief because, as the majority opinion explains, his indictment alleges that a *single* possession supported *both* of his 924(c)(1)(A) convictions. In *Bousley*, the Supreme Court held that in determining whether a prisoner is "actually innocent," a court may not consider factual theories not alleged in a habeas petitioner's indictment or which, based on record evidence, the government elected not to charge in exchange for obtaining a guilty plea. 523 U.S. at 624. The government in *Bousley* indicted and convicted the prisoner for "using" a firearm in violation of Section 924(c)(1). *Id.* After the Supreme Court issued a decision clarifying what constitutes "use" of a firearm for purposes of Section 924(c)(1),

21

the prisoner sought relief under Section 2255(a) on grounds that his plea to "using" the firearm was not voluntary and knowing because he could not have known the correct meaning of "using," notwithstanding that he had procedurally defaulted that argument. *Id.* at 621. The Court held that the prisoner could not establish the "cause" necessary to excuse his procedural default, and therefore that the prisoner could only obtain habeas relief through the actual innocence gateway. *Id.* at 622. In doing so, the Court expressly rejected the government's argument that the prisoner "must demonstrate that he is actually innocent of both 'using' and 'carrying' a firearm in violation of § 924(c)(1)." *Id.* at 624. The Court explained that the prisoner need not demonstrate that he was actually innocent of "carrying the firearm" because his "indictment charged him only with 'using' firearms" and "there [wa]s no record evidence that the Government elected not to charge petitioner with 'carrying' a firearm in exchange for his plea of guilty." *Id.*

As in *Bousley*, Petitioner's indictment charged him only with a single possession—it did not allege that subsets of the uniform list of firearms set forth in each charge of the indictment constituted independent "possessions." Accordingly, any holding that a reasonable juror could have found that subsets of the firearms constituted distinct possessions would amount to an impermissible constructive amendment of the indictment. *See Stirone v. United States*, 361 U.S. 212, 215–16 (1960). ("[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself.").