In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-2860

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAYONTA MCCLINTON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cr-00252-TWP-MJD-1 — **Tanya Walton Pratt**, *Chief Judge.*

_____

ARGUED OCTOBER 25, 2021 — DECIDED JANUARY 12, 2022

_____

Before EASTERBROOK, ROVNER, and WOOD, *Circuit Judges*.

ROVNER, *Circuit Judge*. In search of pharmaceutical drugs, Dayonta McClinton and five accomplices, Marvin Golden, Malik Perry, Larry Warren, Willonte Yates, and an unnamed getaway driver robbed a CVS pharmacy at around eight o'clock in the evening of October 13, 2015. The robbers pointed guns at customers, grabbed purses and wallets, and demanded their cell phones, which they stomped to prevent calls to police. But all did not go as planned. One customer

fled, and although Yates chased after her, she escaped by jumping a fence and running to a nearby restaurant. Yates returned and told the others to hurry up. He and Warren took money from the cash register, but the drugs proved harder to acquire than they had thought. One of the gang pointed a gun at a pharmacy technician and demanded drugs, but the technician informed him that the majority of the drugs that the crew wanted were kept in a time-delay safe. He did give one of the robbers one bottle of hydrocodone, which the pharmacy kept outside the safe pursuant to store policy for this exact purpose—to mollify robbers who might become agitated when the safe would not open. The policy turned out to be prescient. When the pharmacist entered the passcode and the safe would not open, the robbers became agitated, banging on the counter and knocking over a cabinet. To appease the robbers, the pharmacist additionally offered promethazine syrup and acetaminophen—both with codeine, neither of which were in the safe. Worried about time, the robbers left before the safe opened. Perry had possession of the few drugs that the robbers were able to acquire before leaving the pharmacy.

The team of robbers drove to an alley about ten minutes away to split the proceeds. McClinton and Perry began arguing over the disappointing haul when Perry declared "ain't nobody getting none," and exited the car with all of the drugs. McClinton followed Perry out of the car and shot him four times in the back, killing him. Golden, Warren, and Yates exited the car and ran away. The following day at a dice game, McClinton told another player, that the group had "hit a pharmacy" the night before, and that he shot Perry after they got into a dispute about splitting the proceeds.

After transfer to adult court (McClinton was three months away from his eighteenth birthday at the time of the robbery), a jury found McClinton guilty of robbing the CVS in violation of 18 U.S.C. § 1951(a); and brandishing a firearm during the CVS robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The jury found him not guilty of the indicted crimes of robbery of Perry, in violation of 18 U.S.C. § 1951(a), and causing death while using a firearm during and in relation to the robbery of Perry, in violation of 18 U.S.C. § 924(j)(1). At sentencing, the district court concluded, using a preponderance of the evidence standard, that McClinton was responsible for Perry's murder. The district court judge therefore enhanced McClinton's offense level from 23 to 43, but also varied downward to account for McClinton's age and the sentences of his co-defendants, ultimately sentencing him to 228 months in prison.

McClinton asks us to consider two questions. First, whether the district court could consider conduct for which McClinton was acquitted for purposes of calculating his sentence. The second is whether McClinton's counsel was ineffective during his juvenile transfer proceeding.

## A. The use of acquitted conduct in sentencing

The Supreme Court has held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997). The holdings in this circuit have followed this precedent, as they must. *See, e.g.*, *United States v. Slone*, 990 F.3d 568, 572 (7th Cir. 2021), *cert. denied*, No. 20-8280, 2021 WL 4508213 (Oct. 4, 2021) (noting that "sentencing courts may consider acquitted

conduct provided that its findings are supported by a preponderance of the evidence.").

Despite this clear precedent, McClinton's contention is not frivolous. It preserves for Supreme Court review an argument that has garnered increasing support among many circuit court judges and Supreme Court Justices, who in dissenting and concurring opinions, have questioned the fairness and constitutionality of allowing courts to factor acquitted conduct into sentencing calculations. *See, e.g.*, *Jones v. United States*, 574 U.S. 948, 949–50 (2014) (Scalia, J., joined by Thomas & Ginsburg, JJ., dissenting from the denial of cert.) (noting that it violates the Sixth Amendment when the conduct used to increase a defendant's penalty is found by a judge rather than by a jury beyond a reasonable doubt, and highlighting that this is particularly so when the facts leading to a substantively unreasonable sentence are ones for which a jury has acquitted the defendant); *Watts*, 519 U.S. at 170 (Kennedy, J., dissenting) (allowing district judges "to increase a sentence based on conduct underlying a charge for which the defendant was acquitted does raise concerns about undercutting the verdict of acquittal."); *United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring in denial of the r'hrg en banc) ("Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial."). Many other circuit court judges have supported this position in dissenting and concurring opinions.

But despite the long list of dissents and concurrences on the matter, it is still the law in this circuit—as it must be given the Supreme Court's holding—that a sentencing court may

consider conduct underlying the acquitted charge, so long as that conduct has been found by a preponderance of the evidence. *Watts*, 519 U.S. at 157. Until such time as the Supreme Court alters its holding, we must follow its precedent. *Cross v. United States*, 892 F.3d 288, 303 (7th Cir. 2018) ("As a lower court, we are required to follow the Court's precedents until the Court itself tells us otherwise."). McClinton's counsel advocated thoroughly by preserving this issue for Supreme Court review.

In applying this precedent to the case before us, we may review for clear error only the district court's factual findings that Perry's murder was relevant conduct. *United States v. Vaughn*, 585 F.3d 1024, 1031 (7th Cir. 2009). The United States Sentencing Guidelines define relevant conduct as:

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

> (i) within the scope of the jointly undertaken criminal activity,

> (ii) in furtherance of that criminal activity, and

> (iii) reasonably foreseeable in connection with that criminal activity;

> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

U.S.S.G. 1B1.3. The distribution of proceeds of a robbery is undoubtedly an act that occurs in furtherance of that robbery. *See, e.g., United States v. Hargrove*, 508 F.3d 445, 449 (7th Cir. 2007) (conversations about getting a cut of the proceeds indicated that defendant was still part of the conspiracy); *United States v. Gajo*, 290 F.3d 922, 928 (7th Cir. 2002) (explaining that the conspiracy continues as the co-conspirators acquire the proceeds); *United States v. Morgan*, 748 F.3d 1024, 1036–37 (10th Cir. 2014) ("It is well settled that the distribution of the proceeds of a conspiracy is an act occurring during the pendency of the conspiracy.").

In this case Perry's murder clearly occurred in the course of the planned robbery. Dividing up the proceeds of the robbery was part and parcel of the plan to obtain cash and drugs for the perpetrators. The fact that, in order to avoid detection, the group traveled a safe distance away from the CVS and waited a few minutes to divvy up the drugs and cash, does not sever its connection to the crime. It was Perry's announcement that he intended to keep the stolen drugs for himself that drew McClinton's ire. And it was owing to the prior decision of McClinton, Perry, and others to arm themselves for the robbery that ensured McClinton had a firearm at the ready to settle the dispute by shooting Perry. There is no doubt that under *Watts*, the murder was relevant conduct that could be used to calculate McClinton's sentence.

**B. Ineffective assistance of counsel**

McClinton also claims that the lawyer who represented him during the juvenile transfer proceeding was ineffective for failing to appeal the juvenile court order transferring the matter to adult court. In fact, McClinton is so adamant about bringing this claim before the court now that he moved to file his own pro se supplementary brief on the matter, in addition to his lawyer's brief. At oral argument, with some prompting from the panel, McClinton's lawyer withdrew McClinton's ineffective assistance of counsel claim. We take just a moment to explain why this was the most effective advocacy she could provide to her client.

Having this matter aired before a court is clearly important to McClinton. We can assume, therefore, that he wishes to have the claim heard by a court where it has a chance for success. That is not this court, at this time. The appeal here is a direct appeal from the district court's judgment finding McClinton guilty of robbery and brandishing a firearm in relation to a crime of violence. Our review is limited to the factual record developed in the district court below, which does not include evidence concerning his prior counsel's advice and decision making concerning the transfer order. A defendant does not have the opportunity on appeal to present evidence outside of the record about the ways in which his lawyer below may have been ineffective. Instead, the United States Code creates an opportunity for a secondary or collateral proceeding where the defendant can develop and present to the court all of this evidence, even deposing his own lawyer as a witness. 28 U.S.C. § 2255; *Massaro v. United States*, 538 U.S. 500, 504–09 (2003). For this reason, anyone who raises a claim of ineffective assistance of counsel on direct review, as

McClinton initially did, is doomed to fail. *See Delatorre v. United States*, 847 F.3d 837, 844 (7th Cir. 2017).

During oral argument, McClinton's lawyer dutifully reported to this court that, despite her warning to her client, McClinton was adamant about raising the ineffectiveness claim in the direct appeal. But a defendant only gets one chance to raise a claim of ineffective assistance of counsel. And once he raises the claim and loses, he can never raise it again. *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014).

As we have warned defendants and their lawyers time and time again, claims of ineffective assistance of counsel are "'invariably doomed' on direct review because they often require augmentation of the record with extrinsic evidence, which cannot be considered." *Delatorre*, 847 F.3d at 844 (7th Cir. 2017) (*citing United States v. Gilliam*, 255 F.3d 428, 437 (7th Cir. 2001)). We have even noted that this court has *never* reversed a conviction on direct appeal because of ineffective assistance of counsel. *United States v. Trevino*, 60 F.3d 333, 339 (7th Cir. 1995). As far as we can tell, that statistic remains true today. *See United States v. Morgan*, 929 F.3d 411, 433 (7th Cir. 2019). We have documented our concerns and warnings repeatedly. *See United States v. Harris*, 394 F.3d 543, 557 (7th Cir. 2005) (compiling cases with warnings against pursuing ineffective assistance claims during direct appeal). *See also Massaro*, 538 U.S. at 506.

At the end of the day, counsel's duty to vigorously defend her client in an effective manner means that she should not make a claim that she knows has zero chance of success, when she knows that reserving such a claim for a collateral proceeding is the only means of preserving whatever chance of success on the merits that the claim might have. Some aspects of

the trial and decision-making are completely within the province of the client—"notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018). Trial management, tactical and strategic decisions such as "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence" are all within the lawyer's province. *Id. (citing Gonzalez v. United States*, 553 U.S. 242, 248 (2008)). In this case, McClinton's counsel chose the only competent strategy by withdrawing the claim of ineffective assistance, thus preserving the claim for a later proceeding under 28 U.S.C. § 2255. For this reason, McClinton's pro se motion for leave to file a pro se supplemental brief is DENIED as moot. The judgment of the district court is AFFIRMED in all other respects.