In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-1195

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEON EVANS,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:16-cr-20067 — **Colin S. Bruce**, *Judge.*

———————————

ARGUED JANUARY 11, 2023 — DECIDED JULY 24, 2023

———————————

Before WOOD, BRENNAN, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Deon Evans went to trial on federal drug and gun charges, lost, and received a sentence of about 66 years—the product of his having a prior conviction under 18 U.S.C. § 924(c) and then being convicted of two additional § 924(c) charges in this case. Before us now is Evans's appeal of the two § 924(c) convictions and related mandatory consecutive sentences of 25 years on each conviction. He also challenges the district court's denial of his motion for a new trial.

Evans is right that the district court committed error in allowing the two § 924(c) convictions to stand. The evidence before the jury showed that Evans made a single choice to possess a firearm over a continuous 30-minute span that included a sale of heroin to a confidential informant at a gas station and the police later finding methamphetamine and a gun in his car. No doubt the facts support one § 924(c) conviction, but they do not support two.

A second aspect of this case greatly concerns us—the district court's denial of Evans's motion for a new trial without an evidentiary hearing. Evans rooted his request in the contention that his trial counsel rendered ineffective assistance as a result of a heroin addiction, which affected counsel throughout his representation of Evans in the district court. The contention did not come out of thin air. To the contrary, Evans's trial counsel overdosed on heroin less than three weeks after trial, and his counsel's girlfriend told the police that he had suffered from heroin and alcohol addiction for many years. The district court rejected Evans's request for a new trial, concluding that defense counsel performed well during trial and that the effects of his addiction did not need further exploration in a hearing.

We cannot agree. Evans faced serious criminal charges with serious sentencing consequences. Not only had his appointed counsel never tried a federal criminal case, he also—according to an uncontested police report—was addicted to and using heroin before, during, and after trial. It may be that the district court, upon examining the facts and circumstances surrounding trial counsel's addiction, reaches the same conclusion as it did before. But way too much is at stake to forgo

that modest step—an evidentiary hearing—given the gravity of everything we know on the present record.

## I

### A

In the summer of 2016, Evans twice sold heroin to a confidential source in Gilman, Illinois. On July 29 he sold 50 grams for $4,500 at a gas station. Then on August 24 he returned to the gas station and sold 125 grams for $11,250 to the same informant, this time under surveillance. Law enforcement stopped Evans on the highway 30 minutes later. The officers found cash from the controlled purchase and containers of methamphetamine in a concealed compartment (a "trap") under the rear driver-side seat. They also found two handguns and extra ammunition in a different trap under the rear passenger-side seat.

A grand jury indicted Evans on four counts: two drug distribution charges under 21 U.S.C. § 841 and two firearm charges—one under 18 U.S.C. § 924(c) and a second under 18 U.S.C. § 922(g)(1). Following conflicts with Evans's first two lawyers, the district court appointed Steven Sarm to represent Evans on October 15, 2018. Sarm remained Evans's lawyer through trial.

The case was in flux at the time Sarm joined. Earlier in the proceedings Evans had pleaded guilty to the two § 841 drug distribution counts and to the § 924(c) firearm charge in exchange for the government dropping the § 922(g) felon-in-possession charge. The Probation Office recommended a total sentence of 35 years: 10 for the § 841 offenses and, because Evans had a prior conviction under § 924(c), a mandatory consecutive 25 years for the § 924(c) violation. While still

represented by his former counsel, Evans moved to withdraw the guilty plea to the § 924(c) charge. That motion remained pending when Sarm took over as counsel, and the district court afforded Sarm time to get up to speed on the case.

A few months later, in January 2019, Sarm confirmed that Evans wished to withdraw the § 924(c) plea and urged the district court to grant that motion. The district court did so over the government's objection. The government, as was its right, then returned to the grand jury and received a superseding indictment lodging additional charges—another § 841(a) drug charge and another § 924(c) count. The new charges arose out of the recovery of methamphetamine and firearms from Evans's car during the traffic stop on August 24, 2016. The addition of the second § 924(c) charge was serious business, exposing Evans to a second mandatory sentence of at least 25 years that, upon conviction, would have to run consecutive to any sentence imposed on the first § 924(c) charge. See 18 U.S.C. § 924(c)(1)(C)–(D). In federal criminal law parlance, Evans faced stacked § 924(c) charges.

Advised by Sarm, Evans proceeded to trial in January 2020 on all open counts—two § 841 drug counts and two § 924(c) counts. The government called 11 witnesses, including the confidential informant, the federal agents who monitored Evans's sale of heroin to the informant, and forensics experts who tested the firearms and drugs for Evans's DNA. Sarm only subjected 4 of the 11 to meaningful cross-examination and rested without presenting any evidence or calling any defense witnesses. The jury returned a guilty verdict on all counts.

The district court later sentenced Evans to 65 years and 8 months. Fifty of those years came from the two § 924(c)

convictions, each of which brought with it mandatory minimum and consecutive sentences of 25 years because Evans had a prior qualifying § 924(c) conviction from 2007. See 18 U.S.C. § 924(c)(1)(C)(i). In imposing these consecutive terms, the district court rejected Evans's objection that the trial evidence, which showed Evans sold heroin to an informant just before the police pulled him over and found two guns and methamphetamine in his car, did not support convictions for two § 924(c) offenses. Evans argued that the firearm possession was part of the same continuous incident—the drug sale at the gas station followed in short order by the police stop—and not part of two distinct incidents. The remainder of Evans's sentence came from his convictions on the three drug counts under § 841.

B

Nineteen days after the trial and before Evans's sentencing, Champaign police responded to a 911 call from Steven Sarm's girlfriend reporting that Sarm had overdosed on heroin and needed emergency medical assistance. Sarm survived the overdose. The police report from the incident included a statement from Sarm's girlfriend, who explained that Sarm had gone to an Alcoholics Anonymous meeting earlier that evening and, in all likelihood, bought heroin from a particular drug dealer. She further informed the police that Sarm suffered from depression and had had an alcohol and substance abuse problem for at least six years.

Upon learning of this development, the district court appointed new counsel, Charles Schierer, to represent Evans. Schierer promptly filed a motion for a new trial, arguing that Sarm's longstanding heroin addiction explained his deficient performance at trial—performance so lacking that it

amounted to a violation of Evans's Sixth Amendment right to the effective assistance of counsel. Schierer accompanied his motion with an alternative request for an evidentiary hearing, explaining that examining Sarm in court under oath "would be helpful" to identifying the "specific acts and omissions" that resulted from the heroin addiction—evidence essential to Evans's ineffective assistance of counsel claim. The government opposed both requests, contending in part that it did not believe Sarm was "impaired at any relevant time" while representing Evans.

The district court denied the new trial motion without a hearing, clearing the way for Evans's sentencing. The court saw "no evidence in the record that Sarm was impaired or under the influence of any illegal narcotic, or any drug, during or before Defendant's trial."

Evans now appeals.

## II

### A

We begin with Evans's challenge to his second § 924(c) conviction and the accompanying sentence. Recall that the two stacked § 924(c) charges arose from what occurred on August 24, 2016. The trial evidence showed that Evans first sold heroin to the confidential informant just after noon at a gas station in Gilman, Illinois. Federal agents then conducted aerial surveillance of Evans as he left the gas station and drove through Gilman before heading northbound on Interstate 57. Thirty minutes after the controlled purchase, state police stopped Evans on the highway and found methamphetamine and two guns in his car. At trial the jury convicted Evans of two § 924(c) offenses—based on evidence showing that Evans

had a firearm in his car *both* at the time of the heroin sale at the gas station and 30 minutes later when the police pulled him over and found a gun near the methamphetamine.

In sentencing Evans to consecutive 25-year sentences on the two § 924(c) convictions, the district court focused not so much on whether the government proved multiple, separate instances of gun possession but rather on Evans's two distinct drug offenses. The trial evidence left no doubt that the government could properly charge Evans for both the heroin sale at the gas station and, separately, for the distribution quantity of methamphetamine found in his car. The district court saw no reason that the two distinct drug offenses could not bring with them two accompanying § 924(c) convictions.

Evans now renews his challenge to the two § 924(c) convictions and urges us to reject this predicate-based approach to § 924(c) stacking.

B

The proper starting point is the text of § 924(c)(1)(A), which provides:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime … , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime be sentenced to a term of imprisonment of not less than 5 years.

Companion subsections impose enhanced penalties for repeat offenders like Evans:

> In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final, the person shall be sentenced to a term of imprisonment of not less than 25 years.
>
> …
>
> [N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

*Id.* § 924(c)(1)(C)–(D).

Evans's sentencing challenge requires us to determine the proper units of prosecution under the statute—or, put differently, the "'minimum amount of activity for which criminal liability attaches' for each charge" under § 924(c). *United States v. Rentz*, 777 F.3d 1105, 1108 (10th Cir. 2015) (en banc) (quoting *United States v. Cureton*, 739 F.3d 1032, 1041 (7th Cir. 2014)). We recognized but expressly reserved this question nearly a decade ago. See *Cureton*, 739 F.3d at 1044 n.2. At bottom, the question we ask ourselves is whether the government can properly bring a new § 924(c) charge for each predicate offense that the defendant commits—even if the defendant makes only a single choice to use or possess a firearm in relation to those offenses. Or, as Evans urges, does the government also need to prove for each § 924(c) charge that the defendant chose anew to use or possess a firearm?

The question presented is one of statutory interpretation, and both parties' positions find some support in the language Congress employed in § 924(c)(1)(A). At the most basic level, Evans is right to emphasize that § 924(c) is a firearm offense, not a controlled substance offense. The statute, by its terms, prohibits the use, carry, and possession of a firearm in particular circumstances—when the use or carry is during and in relation to qualifying predicate offenses or, alternatively, when the possession furthers those same predicate offenses. In each proscribed circumstance, it is the use, carry, or possession of the firearm—not the commission of any qualifying predicate crime of violence or drug trafficking crime—that violates § 924(c)(1)(A). From this textual standpoint, it is hard to disagree with Evans.

But the government is right that Congress used conditional language in § 924(c)(1)(A): the prohibited use, carry, or possession of a firearm must occur with the prescribed relationship to a crime of violence or a drug trafficking crime (here, drug possession and distribution). It therefore makes perfect sense, the government's position goes, to charge a defendant with multiple counts under § 924(c) when the defendant commits multiple predicate offenses and chooses to possess, use, or carry a firearm at least once, so long as his choice properly relates to each of the predicate offenses.

Important guidance comes from two cases we decided in 2014. In *United States v. Cureton*, Thomas Cureton possessed a single gun while he "simultaneously committed" two predicate crimes of violence (interstate communication of a ransom request and attempted extortion) arising out of the same telephone call. 739 F.3d at 1043. We reversed one of his § 924(c) convictions, reasoning that Cureton made "only one choice to

use a gun" in connection with these predicate offenses. *Id.* at 1043–44. We saw the statutory language as compelling this outcome because § 924(c) "imposes its punishment based on the use of a firearm (and provides for increased punishment based on how the firearm is used)—not on the nature of the predicate offense." *Id.* at 1043. The government's predicate-based interpretation, conversely, ran afoul of the statute because it amounted to "punish[ing] only the underlying predicate offenses themselves," not "the choice to use or possess a firearm in committing a predicate offense." *Id.* at 1044–45.

We adhered to much the same reasoning in *United States v. Cejas*, 761 F.3d 717 (7th Cir. 2014). Constantino Cejas committed two predicate drug offenses six days apart in February 2011. See *id.* at 731. We affirmed two corresponding § 924(c) convictions because of the passage of time between the commission of the offenses and related predicate drug-distribution offenses: the six days showed there was a "meaningful difference" dividing the defendant's two distinct choices to possess a gun in furtherance of drug trafficking charges. *Id.* We emphasized that the facts showed that the government had twice proved (on day one and again on day six) both essential elements of a § 924(c) charge—the choice to possess a firearm *and* a predicate offense.

*Cureton* and *Cejas* emphasize that the government can stack § 924(c) charges only when the defendant makes more than one decision to use a firearm. Looking outside our case law, we see that our fellow circuits have adopted much the same interpretation of § 924(c). Their decisions consistently emphasize that the defendant's choice to possess a firearm is key. See, *e.g.*, *United States v. Finley*, 245 F.3d 199, 207 (2d Cir. 2001); *United States v. Phipps*, 319 F.3d 177, 187 (5th Cir. 2003);

*United States v. Jackson*, 918 F.3d 467, 492 (6th Cir. 2019); *Rentz*, 777 F.3d at 1111; *United States v. Anderson*, 59 F.3d 1323, 1328 (D.C. Cir. 1995) (en banc).

Consider, for example, the Sixth Circuit's framing in *Jackson*. The court focused on the verbs capturing the conduct that Congress criminalized in § 924(c)(1)(A), explaining that "[w]hether a criminal episode contains more than one unique and independent use, carry, or possession depends at least in part on whether the defendant made more than one choice to use, carry, or possess a firearm." 918 F.3d at 490 (quoting *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016)). Put simply, the Sixth Circuit concluded that § 924(c) criminalizes a choice to employ a firearm, not the commission of predicate offenses. See *id.* at 492–93.

The Tenth Circuit adhered to a similar approach in *Rentz*, rooting a meaningful portion of its reasoning in a broader observation regarding the full statutory context of § 924(c). Writing for the en banc Tenth Circuit, then-Judge Gorsuch underscored Congress's decision to impose steep sentencing consequences on second and subsequent convictions under § 924(c):

> This massive sentencing differential suggests a legislative judgment that second violations are something different in kind from initial violations. Such a difference is obvious enough if a second conviction requires the defendant to make a second choice to use, carry, or possess a gun to further a crime—say, by firing a gun at different people on different occasions. In cases like that, the defendant hasn't made one intentionally bad decision but two. But if a second

> conviction doesn't require a second blamewor-
> thy choice to use, carry, or possess a firearm in
> aid of a predicate act, the logic behind the leap
> in punishment becomes less apparent.

*Rentz*, 777 F.3d at 1111. To the extent that Congress wishes to impose such penalties based on the commission of each predicate offense—rather than the choice to use, carry, or possess a firearm—it can amend the statute to clarify that intent. But focusing on the defendant's choice aligns the offense conduct with Congress's sentencing scheme in § 924. The Tenth Circuit therefore held that a separate use, carry, or possession of a firearm is necessary for each count of conviction under § 924(c). See *id.* at 1115.

In the end, then, we follow the same course and conclude that stacking § 924(c) charges is permissible only if the defendant has decided more than once to possess, use, or carry a firearm in the manner proscribed by Congress.

## C

The trial evidence permitted one—but not two—§ 924(c) convictions in Evans's case. Return to the events on August 24, 2016. Just 30 minutes separated Evans's controlled sale of heroin at the gas station from the subsequent traffic stop where law enforcement found the methamphetamine and guns in his car. Important, too, is the fact that the government subjected Evans to aerial surveillance for the entirety of those 30 minutes before pulling him over. The surveillance revealed nothing suggesting Evans stopped to pick up a gun. See *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020) (affirming stacked § 924(c) convictions when "the jury was presented

with ample evidence of different uses of different guns, all in furtherance of the predicate drug-trafficking offenses").

On this evidence, and by convicting Evans on both § 924(c) charges, the jury necessarily credited the government's contention that the guns found in the car during the traffic stop were also present in the vehicle 30 minutes earlier at the gas station. All these considerations show that Evans made only one choice to possess a firearm in furtherance of the predicate drug offenses, making this case more like *Cureton* than *Cejas*. His possession of a firearm was itself a continuing choice across both predicate offenses, so he only violated § 924(c) once.

That leaves the proper remedy. "[W]hen part of a sentence is vacated the entire sentencing package becomes 'unbundled' and the judge is entitled to resentence a defendant on all counts." *United States v. Smith*, 103 F.3d 531, 533 (7th Cir. 1996); see also *Cureton*, 739 F.3d at 1045 (vacating the § 924(c) conviction and remanding for new sentencing). Rather than simply shaving 25 years off Evans's term of imprisonment, the district court should consider Evans's sentence anew.

### III

#### A

We come now to Evans's challenge to the denial of his motion for a new trial. The fact pattern is alarming. Evans went to trial on very serious charges, did little at trial to test the government's case, and received convictions across the board—only to learn three weeks later that his counsel, Steven Sarm, overdosed on heroin and, according to a police report, had been suffering from a substance abuse addiction for the last six years. Anyone reading this opinion will ask the same

question: how did Sarm's addiction affect his representation of Evans?

The district court sought to answer the question as any court would, by reviewing the trial transcript in detail, assessing Sarm's performance at every step, and trying to recall whether there were any indications of impairment. The district court found nothing warranting a new trial: Sarm gave an opening statement, cross examined those witnesses that it made sense to cross examine, delivered a closing argument, and, above all else, appeared attentive and engaged all throughout trial. The district court found it of no moment that Sarm did not present any evidence or call any witnesses, as this was an open-and-shut case for the government.

Although Sarm's performance strikes us as more lackluster than the district court found, we agree that his trial performance by itself is not a basis for reversal. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In presiding over the trial, the district judge had a front row seat to everything that transpired and was well-positioned to assess Sarm's trial performance. Indeed, the district judge even recalled complimenting Sarm after the jury returned its verdict.

If we limited ourselves to those findings, we would have a hard time second-guessing the district court's observations. And if this were an ordinary case we would stop there. But Sarm's heroin overdose and the accompanying police report flagging years of substance abuse make this case anything but ordinary. That key report calls into question the entire span of Sarm's representation of Evans.

B

Our much graver concern is what is missing from the record prior to trial. Recall the procedural history generally—and specifically when Sarm joined the case as appointed counsel. He immediately assisted Evans with a pending motion to withdraw his guilty plea on the § 924(c) charge, which the district court granted. The government responded by returning to the grand jury and lodging a superseding indictment with two new offenses, including a second § 924(c) count. The result of Evans's plea withdrawal was dire: he consequently faced charges risking *multiple consecutive* 25-year minimum sentences. Further raising the stakes was the additional pressure of another § 841 drug charge, premised on the methamphetamine in the car. Now, instead of a likely sentence of 35 years or so, Evans risked the prospect of almost twice that.

Having taken our own detailed look at the government's evidence, it is difficult to see any viable trial defense Evans might have had. He sold drugs to informants in transactions monitored by law enforcement and captured on video. And when the police pulled over Evans on Interstate 57 they found two guns, extra ammunition, and distribution quantities of methamphetamine in his car. Plain and simple, the government had ironclad proof that Evans was an armed drug dealer. In light of this evidence, we have a hard time understanding the basis on which Sarm advised Evans to persist in his effort to withdraw his initial guilty plea and proceed to trial, especially when anyone with federal criminal law experience could predict with high confidence that the government would react to the withdrawal of the initial guilty plea by returning to the grand jury and adding a second § 924(c) charge. That development would increase Evans's sentencing exposure on the § 924(c) charges alone from a minimum of 25

years to at least 50 years. That is exactly what transpired, and it happened in a case where Evans had next to no chance of prevailing at trial, even taking into account his successful argument on appeal that the government could not stack § 924(c) charges.

To be sure, Evans had every right to choose to go to trial and take his chances, however slim they may have been. Our point is different. We worry that Evans made that choice advised by an attorney addicted to heroin with little knowledge of federal criminal law. Perhaps not. It may be that Sarm did convey sound advice, and Evans proceeded to trial with his eyes wide open.

Still, it is this decision-making, and the role Sarm potentially played in facilitating it, that so concerns us. See *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."). This same concern is surely what prompted Evans's new counsel to urge the district court to hold an evidentiary hearing. Sarm's substance abuse issues could very well have affected the advice he gave Evans from the outset, before Evans withdrew his guilty plea and proceeded to trial. Layered on top of this ill-conceived strategy is the fact that this was Sarm's first ever federal criminal case. It is anything but clear on the record before us that Sarm fully appreciated, or even attempted to learn about, the major sentencing ramifications of a § 924(c) charge given Evans's criminal history. A diligent lawyer would have confirmed on the record that his client fully understood the risk of losing at trial on stacked § 924(c) charges. Yet that confirmation is completely missing from the record.

Mindful of the gravity and totality of the circumstances of a defendant proceeding to trial on stacked § 924(c) charges in a case where defense counsel suffered from a heroin addiction and the government had overwhelming evidence, the district court should have held an evidentiary hearing before denying Evans's motion for a new trial. It is imperative that the district court supplement the record to determine the effects, if any, that Sarm's heroin addiction might have had during the entirety of his representation of Evans.

The police report, which the underlying decision does not mention, bolsters our concerns. See *James v. Eli*, 889 F.3d 320, 328 (7th Cir. 2018) (explaining a district court can "abuse its discretion 'when it overlooks essential evidence'" (quoting *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1159 (7th Cir. 1989))). This report suggests that heroin was just one of several addiction issues that could have hampered Sarm's decision-making in the months and years preceding trial. And the report further indicates that substance abuse likely plagued Sarm across a timespan when no single judge could have possibly observed the full ramifications—the case flipped from Judge Bruce to Judge Darrow in August 2018 before returning back to Judge Bruce in September 2019.

We do not take comfort in Sarm's cursory affidavit either, where he stated he "was not impaired at any relevant time" while representing Evans. This affidavit—submitted 18 months after the overdose and while Sarm purportedly continued to practice law—serves an obvious self-interest and has "not been tested through the adversarial process at any kind of hearing." *Campbell v. Reardon*, 780 F.3d 752, 772 (7th Cir. 2015).

Further amplifying our concern is the reality that this is Evans's only chance to litigate this Sixth Amendment challenge to Sarm's performance in the district court. Time and again we have emphasized that, in almost all instances, direct appeals of ineffective assistance of counsel claims are ill-advised. See, *e.g.*, *United States v. Onamuti*, 983 F.3d 892, 895 (7th Cir. 2020); *United States v. Cates*, 950 F.3d 453, 456–57 (7th Cir. 2020). That is so because our review is limited to the factual record developed in the district court below, which rarely includes specifics around counsel's representation. See, *e.g.*, *United States v. McClinton*, 23 F.4th 732, 737 (7th Cir. 2022). But exceptions to this norm exist—and Evans's case is one of those few. Indeed, now that Evans has squarely presented this issue before us, leaving his ineffective assistance of counsel challenge to collateral review would doom it because "once he raises the claim and loses, he can never raise it again." *Id.* Defendants get only one bite at the apple. The most prudent course of action, therefore, is to remand the case for an evidentiary hearing.

At bottom, the record is incomplete. Given the seriousness of what transpired, Evans's conviction should only be affirmed on a record where we can be much more certain of Steven Sarm's condition and preparedness before and during trial. An evidentiary hearing is a small step that will help resolve the issue, in circumstances that could hardly be more consequential for Evans—or, for that matter, the public's confidence in the administration of criminal justice.

**IV**

In the end, we VACATE the second of Evans's two § 924(c) convictions as well as his sentence. We also VACATE the district court's decision on Evans's motion for a new trial. We REMAND for proceedings consistent with this opinion.

BRENNAN, *Circuit Judge*, dissenting. I see this case differently than my colleagues on both issues presented in this appeal.

On the first issue, the relevant question in my view is whether the exact same conduct underlies each of Evans's two predicate acts. Because he possessed firearms in furtherance of two separate and distinct offenses, the evidence supports two convictions under 18 U.S.C. § 924(c)(1)(A).

On the second issue, I do not believe the district court abused its discretion by not holding an evidentiary hearing before denying Evans's motion for a new trial. Although the report of attorney Sarm's overdose after trial causes concern, no evidence suggests he was impaired at any point during his representation of Evans, or even if he was, that he provided ineffective assistance as a result.

## I. Two § 924(c) Convictions

Section 924(c)(1)(A) proscribes the use or carry of a firearm "during and in relation to any crime of violence or drug trafficking crime" or the possession of a firearm "in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A). This appeal does not require us to determine the proper unit of prosecution for § 924(c). In *United States v. Cureton*, this court decided that the unit "is the use, carriage, or possession of a firearm during and in relation to a predicate offense." 739 F.3d 1032, 1043 (7th Cir. 2014). We recognized that the "statute does not punish the mere use, carriage, or possession of a firearm … . Nor is it enough to look simply at the predicate offense." *Id.* Rather, the statute punishes "the choice to use or possess a firearm in committing a predicate offense, in addition to the punishment otherwise imposed for the predicate crimes." *Id.* at 1045.

Given § 924(c)'s unit of prosecution, this court concluded in *Cureton* that the single use of a firearm which results in multiple, simultaneously committed predicate offenses does not support multiple § 924(c) charges. *Id.* at 1043–44. The defendant in *Cureton* held a gun to his roommate's head and demanded that she call her relatives for cash—simultaneously committing the crimes of attempted extortion and the interstate communication of a ransom request. *Id.* at 1034. Because the defendant "used a firearm once, in the simultaneous commission of two predicate offenses" premised on the exact same conduct, only one § 924(c) conviction could stand. *Id.* at 1043. In so holding, we did not disturb our court's prior decisions that "distinctly committed crimes, even those committed on the same day, can support multiple § 924(c) violations and the consecutive sentences that result." *Id.* at 1041 (citing *United States v. Paladino*, 401 F.3d 471, 478–79 (7th Cir. 2005)).

Other circuits agree that § 924(c) does not authorize multiple convictions when a single firearm use results in simultaneously committed predicate offenses. *See, e.g.*, *United States v. Phipps*, 319 F.3d 177, 186 (5th Cir. 2003) (upholding one § 924(c) conviction when defendant brandished a weapon once while simultaneously committing carjacking and kidnapping); *United States v. Johnson*, 25 F.3d 1335, 1336–38 (6th Cir. 1994) (en banc) (upholding one § 924(c) conviction when defendant possessed a firearm while simultaneously possessing different controlled substances); *United States v. Vichitvongsa*, 819 F.3d 260, 266 (6th Cir. 2016) (upholding one § 924(c) conviction when defendant brandished a firearm to simultaneously further two different conspiracies); *United States v. Jackson*, 918 F.3d 467, 492 (6th. Cir. 2019) (upholding one § 924(c) conviction when defendant brandished a weapon once while simultaneously committing two carjackings);

*United States v. Rentz*, 777 F.3d 1105, 1115 (10th Cir. 2015) (en banc) (upholding one § 924(c) conviction when defendant fired a single shot that injured one victim and killed another); *United States v. Wilson*, 160 F.3d 732, 749–50 (D.C. Cir. 1998) (upholding one § 924(c) conviction when defendant shot a witness, simultaneously committing the crimes of first-degree murder and killing a witness to prevent testimony).

These other courts address the single *use* of a firearm, but they do not speak to multiple predicate offenses committed during the continuous *possession* of a firearm. *See, e.g.*, *Phipps*, 319 F.3d at 186 n.7. ("[W]e speak only of use, not of carriage or possession."); *Jackson*, 918 F.3d at 492 (quoting *Vichitvongsa*, 819 F.3d at 266) ("[The defendant]'s two § 924(c) convictions were premised on his use of 'the same firearm *one* time.'"); *Rentz*, 777 F.3d at 1107 ("The parties before us agree that [the defendant] 'used' a gun only once."); *Wilson*, 160 F.3d at 749 ("It is undisputed that [the defendant] used his firearm only one time."). Only the Sixth Circuit's decision in *Johnson* addressed firearm possession. 25 F.3d at 1338. Because that defendant possessed a firearm during the simultaneous possession of different controlled substances, the court concluded the defendant violated § 924(c) once. *Id.*

I see the question here as whether § 924(c) authorizes two convictions when a defendant, like Evans, continually possesses two firearms in furtherance of two distinct predicate acts. In vacating Evans's second § 924(c) conviction, the majority opinion relies on the Tenth Circuit's decision in *Rentz*, which held that each § 924(c) charge "requires an independent use, carry, or possession." 777 F.3d at 1115. But *Rentz* left unanswered the precise issue of "what exactly suffices to constitute a unique and independent use, carry, or possession

sufficient to support a second or successive" § 924(c) charge. *Id.* In particular, the Tenth Circuit did not address how § 924(c) applies when a defendant "continually possesses a firearm or firearms while committing multiple violent or drug trafficking offenses." *Id.* at 1130 n.14 (Matheson, J. concurring). Similarly, the Sixth Circuit in *Jackson* declined to speak to "situations where multiple § 924(c) convictions are predicated on separate offenses that occurred as part of 'the same criminal episode.'" 918 F.3d at 492 (quoting *Vichitvongsa*, 819 F.3d at 269–70). So, I do not see *Rentz* or *Jackson* controlling this case.

In *Cureton*, we expressly reserved the question of whether possession of a firearm during "predicate offenses that were *not* simultaneously committed" but "nearly so" could support multiple § 924(c) charges. 739 F.3d at 1044 n.2 (emphasis added). The Second Circuit, in *United States v. Finley*, vacated a § 924(c) conviction when the defendant committed two predicate offenses three minutes apart while in continuous possession of a firearm. 245 F.3d 199, 208 (2d Cir. 2001). The defendant in *Finley* sold cocaine to an undercover officer. *Id.* at 202. Three minutes later, several officers entered the defendant's home, finding additional cocaine and a sawed-off shotgun. *Id.* The Second Circuit viewed the sale and possession of cocaine as "simultaneous or nearly so" in holding that such conduct supported only one § 924(c) conviction. *Id.* at 207. I agree with the Fifth Circuit's conclusion in *Phipps*, 319 F.3d at 188 n.11, that "the predicate offenses in *Finley*," even if separated by three minutes, "were not simultaneous."

Shortly after *Cureton*, this court held in *United States v. Cejas* that a defendant who continuously possessed the same gun during two drug deals taking place six days apart could

be convicted of two § 924(c) violations. 761 F.3d 717, 731 (7th Cir. 2014). Cejas argued that he violated § 924(c) only once "because his possession of the gun was continuous and uninterrupted." *Id.* at 730. He "never relinquished and required possession" of his gun prior to the second drug deal. *Id.* This court rejected the defendant's argument and upheld both § 924(c) convictions because the "two drug offenses [were] based on separate and distinct conduct." *Id.* at 731. It was "irrelevant that the same gun was used in each drug transaction or that [the defendant] had continuous possession of it; all that matter[ed was] that *a* firearm was involved in furthering each distinct drug offense." *Id.*[1]

By any metric—time, location, and type of drug—this case involved the commission of two distinct predicate crimes.

---

[1] The majority opinion characterizes *Cejas* as involving "two distinct choices to possess a gun in furtherance of drug trafficking charges." *Rentz* also described *Cejas* as "upholding two convictions for two acts of possession separated by nearly a week." 777 F.3d at 1115.

I disagree with this reading of *Cejas*. There, the defendant had "continuous possession" of a gun during two distinct drug offenses. *Cejas*, 761 F.3d at 731. He specifically did not choose to relinquish and then reacquire his weapon. *Id.* at 730. To the extent Cejas made a "choice," it was to further two drug offenses by carrying a weapon, not necessarily a choice to possess the weapon two separate times.

Even if the focus is on "choice," it is unclear whether the relevant choice is *to possess* a gun or to possess a gun *in furtherance of a drug trafficking crime*. Based on the unit of prosecution—defined as "each predicate offense in which a firearm is carried, used, or possessed with the intent to further the drug crime," *Id.* at 731 (citing *Cureton*, 739 F.3d at 1041–43)—I view it as the latter. Here, the evidence supports the conclusion that Evans made two choices to further two distinct drug trafficking crimes with a weapon.

Evans placed heroin, methamphetamine, and two firearms in two concealed compartments in his vehicle. Before the heroin sale, his possession of the guns could be said to have simultaneously furthered the possession of both drugs. Evans went on to commit two distinct predicate offenses—he engaged in different conduct, at different times, in different places. First, Evans possessed a firearm in his vehicle during the heroin sale at the gas station. Once he sold the heroin, the first predicate offense was completed. Evans then decided to keep the firearms to further his possession with intent to distribute methamphetamine. He left the gas station and drove through the town of Gilman before heading northbound on Interstate 57. Thirty minutes later, police stopped Evans's vehicle on Interstate 57 north of Ashkum, Illinois, about 10 miles away from Gilman. After searching his vehicle, police found the hidden methamphetamine and firearms.

Although 30 minutes between predicate acts is closer in time than the six days at issue in *Cejas*, Evans's conduct did not occur "simultaneously" as in *Cureton* or any of the circuit precedents cited above. And the "exact same conduct," *Cureton*, 739 F.3d at 1035, did not form the basis of both predicate offenses. One predicate offense involved the distribution of heroin, while the second predicate offense involved the possession with intent to distribute methamphetamine. These offenses also took place in different locations, one at a gas station and the other on Interstate 57, approximately 10 miles away. *Cejas* supports the conclusion that the continuous possession of a firearm during multiple drug trafficking crimes can form the basis of multiple § 924(c) convictions. As in *Cejas*, Evans's "two drug offenses [were] based on separate and distinct conduct." 761 F.3d at 731. None of the cases the majority

opinion cites include a gap in time, distance, or different conduct such as here.

This leads to a harsh result for Evans. Due to his prior criminal history, he faces a mandatory 25-year sentence for each additional § 924(c) conviction. *See* 18 U.S.C. § 924(c)(1)(C)–(D). This court acknowledged in *Cejas* that a "defendant who sells drugs to multiple customers at different times on the same day while possessing a gun could be subjected to multiple consecutive convictions under § 924(c), while an individual who sells the same quantity of drugs to one customer would not." 761 F.3d at 731. Here, Evans faced a second § 924(c) charge when the government sought and secured a superseding indictment. As stated in *Cejas*, this court does "not have the authority to step into the place of the prosecutors" to exercise discretion regarding which charges to bring. *Id.* at 732.

In my judgment, Evans's possession of a firearm in furtherance of two distinct predicate offenses which did not occur at the same time supports two § 924(c) charges.

## II. Motion for New Trial

The district court, in my view, did not abuse its discretion in denying Evans's motion for a new trial without an evidentiary hearing. *See United States v. Foy*, 50 F.4th 616, 622 (7th Cir. 2022), *cert. denied*, No. 22-849, 2023 WL 4163220 (U.S. June 26, 2023) (noting this court reviews the denial of a new trial motion for an abuse of discretion).

Notwithstanding this court's previous warnings about doing so, Evans brought his ineffective assistance of counsel claim on direct appeal through a motion for a new trial. *See* FED. R. CRIM. P. 33. Usually, this court "leave[s] ineffective

assistance of counsel claims for collateral review." *United States v. Simpson*, 864 F.3d 830, 834 (7th Cir. 2017). But "an ineffective assistance claim raised in a motion for new trial" is typically "addressed by holding an evidentiary hearing for the trial court to consider the evidence of the trial counsel's deficiency and its possible effect on the outcome." *United States v. Malone*, 484 F.3d 916, 919 (7th Cir. 2007). We review the denial of an evidentiary hearing for abuse of discretion. *United States v. Coscia*, 4 F.4th 454, 482 (7th Cir. 2021).

To obtain relief for ineffective assistance of counsel, the defendant must first show that defense counsel's "performance was deficient," as measured by "an objective standard of reasonableness … under prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To establish deficiency, a defendant must "show that his counsel's errors were so far below the level of competent representation that it was as though he had no counsel at all." *Myers v. Neal*, 975 F.3d 611, 620 (7th Cir. 2020). Second, "the defendant must show that the deficient performance prejudiced the defense," meaning there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694.

The majority opinion concludes—and I agree—that Sarm's trial performance does not provide a basis for reversal. Instead, the focus is in on a single aspect of Sarm's pretrial performance: assisting Evans in pursuing a motion to withdraw his guilty plea on the first § 924(c) charge. It is important to note that Evans does not argue that Sarm provided ineffective assistance by helping him withdraw his guilty plea. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (noting that, under the party presentation principle, parties

"are responsible for advancing the facts and argument enti-
tling them to relief"). Neither party briefed this matter in the
district court or on appeal. So, arguably, the matter is waived.
*See Santiago v. Streeval*, 36 F.4th 700, 710 (7th Cir. 2022) ("An
argument not raised … before the district court is waived on
appeal."); *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 464 (7th Cir.
2021) ("Undeveloped arguments are waived on appeal.").

Beyond waiver, Sarm's aid to Evans in withdrawing his
guilty plea does not amount to deficient performance. Even
when represented by different counsel, Evans persisted in his
efforts to withdraw his guilty plea on the § 924(c) charge. With
the assistance of counsel David Rumley, in April and May
2017, Evans pleaded guilty to three of the initial four charges
against him, including the § 924(c) charge. Shortly afterwards,
Evans talked with Rumley about his desire to withdraw his
guilty plea on the § 924(c) count. Rumley had warned Evans
that doing so might rub prosecutors the wrong way. In Janu-
ary 2018, Evans filed a pro se motion alleging Rumley pro-
vided ineffective assistance of counsel because Evans "would
not have plead[ed] guilty" to the two other drug charges had
he known he faced a sentencing enhancement. Viewing that
motion as a request for new counsel, the district court ap-
pointed attorney Harvey Welch to represent Evans.

Welch—not Sarm—filed an initial motion to withdraw Ev-
ans's guilty plea on only the § 924(c) charge. Due to Welch's
"lack of communication" and his "not taking the time … to
properly prepare [Evans's] motion to withdraw [his] plea,"
Evans filed another pro se motion requesting new counsel.
Enter Sarm—the eighth attorney to represent Evans during
these proceedings. Sarm refiled Evans's motion to withdraw
his guilty plea on the § 924(c) charge, and the district court

held a hearing on the motion. The district court noted that Evans was aware of the "25-year mandatory minimum" sentence. After hearing testimony from Evans, the district court concluded that the "fair and just result" was to allow the defendant to withdraw his guilty plea.

Evans consistently expressed his desire to withdraw his guilty pleas. With the assistance of three consecutive, different attorneys, Evans sought to do just that—take his chances at trial. He knew the consequences could be severe, as he was expressly aware of the 25-year mandatory sentence that accompanied the § 924(c) charge. Sarm's decision to help Evans pursue the motion to withdraw his § 924(c) guilty plea originally filed by Evans's former counsel does not amount to an "overall deficient performance." *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009).

For the majority opinion, Sarm's heroin overdose 19 days after trial changes the calculus. According to a police report on the incident, Sarm's girlfriend told police officers that Sarm "had an alcohol and substance abuse problem for at least six years."[2] While this report is concerning, Evans provided, according to the district court, "no evidence that Sarm was impaired during or before trial."

---

[2] According to the majority opinion, Sarm "was addicted to and using heroin before, during, and after trial." The police report states that Sarm dealt with a substance abuse problem for six years. But that report does not speak to when Sarm used controlled substances during those six years. In fact, Sarm's girlfriend believed he had gone to an Alcoholics Anonymous meeting on the night he overdosed. I do not see support in the record, including in the police report, that Sarm was using heroin before and during trial.

After Evans learned of Sarm's overdose, the district court granted Evans's request to file a tardy motion for a new trial. After reviewing Evans's motion and the government's response, the district court was not satisfied with how the parties had addressed the "central issue" of "whether Sarm was impaired during his representation of [Evans]." So, the court ordered both parties to file position statements addressing a series of specific questions:

(1) was Sarm in some way impaired during trial (or before trial)?

(2) if Sarm testifies or provides an affidavit that he *was* impaired during relevant times, what impact does that have on Defendant's ineffective assistance claim?

(3) if Sarm testifies or provides an affidavit that he was *not* impaired during relevant times, what impact does that have on Defendant's ineffective assistance claim?

(4) absent any evidence directly from Sarm on his condition (whether by testimony or affidavit), what can the court permissibly infer and how should that affect the court's ruling on the issue of a new trial?

(5) even if the evidence against Defendant was overwhelming, would Sarm's potential condition during the trial (or before) constitute a structural error necessitating a new trial, regardless of the impact the condition had on Sarm's representation?

The court reviewed those statements and concluded "there [was] no evidence in the record that Sarm was impaired or under the influence of any illegal narcotic, or any drug, during or before [Evans's] trial." The only evidence on the matter of Sarm's impairment before and during trial was Sarm's affidavit. In it, Sarm averred he "was not impaired …at any relevant time," including during Evans's jury trial, pretrial hearings, trial preparation, and meetings with Evans. Although the affidavit may serve Sarm's self-interest, Evans presented no evidence to rebut Sarm's assertions. *See Galbraith v. United States*, 313 F.3d 1001, 1010 (7th Cir. 2002) (noting "[the defendant] himself [could] have submitted a sworn affidavit recounting the facts … and surrounding events" in support of his claim for ineffective assistance of counsel).

Crucially to me, the district court stated it "had the opportunity during many months, in many lengthy and substantive courtroom proceedings (including motion hearings and trial) to observe Sarm's behavior and performance" and "[a]t no time did [it] have any indication that Sarm was impaired or under the influence in any way." At the conclusion of trial, the district court even found Sarm's representation of Evans to be "commendable," stating on the record to Sarm and Evans: "Just for what it's worth, I thought you did a really good job. Mr. Evans, I hope you appreciate what a good job Mr. Sarm has done." Indeed, even if there was proof of Sarm's impairment before or during trial, that would not amount to per se ineffective assistance of counsel. *See Burdine v. Johnson*, 262 F.3d 336, 395 (5th Cir. 2001) ("Prejudice has not been presumed for claims of denial of effective-assistance due to counsel's alleged impairment because of alcohol, drug use, or a mental condition."); *see also United States v. Jackson*, 930 F. Supp. 1228, 1234 (N.D. Ill. 1996) ("Alcoholism, or even alcohol

or drug use during trial, does not necessarily constitute a *per se* violation of the Sixth Amendment absent some identifiable deficient performance resulting from the intoxication."). So, Evans still would have needed to show that Sarm's alleged impairment resulted in deficient performance and caused him prejudice.

A district court does not abuse its discretion by declining to hold an evidentiary hearing when "there is no reason to suppose that a hearing would produce evidence justifying the grant of a new trial." *Simpson*, 864 F.3d at 834. As mentioned, Evans did not argue in his motion for new trial that Sarm erred in advising him to withdraw his guilty plea or that he was prejudiced as a result—even with hindsight of the additional § 924(c) charge. Nor does he do so on appeal with the assistance of appointed counsel. Instead, Evans took issue with topics like Sarm's preparedness for trial, his decision not to present evidence, and his cross-examination of certain witnesses. But the district court concluded that Evans had failed to explain "*how* counsel was deficient and *how* exactly that deficiency prejudiced him." Characterizing allegations of Sarm's impairment as conclusory or speculative rather than specific, the court found that an evidentiary hearing was not necessary.

The district court did not abuse its discretion in reaching that decision. It relied on its own observations of Sarm's actions and representation of Evans during several court appearances and a three-day trial, the parties' position statements, and the lack of evidence that Sarm was impaired before or during trial. I do not fault the district court for failing to address an argument not presented. For these reasons, I

also part ways with my colleagues on the decision to vacate the district court's denial of Evans's motion for a new trial.